UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:18-CR-144 |
| | ) | Chief Judge Crenshaw |
| MARK BRYANT | ) | |

## UNITED STATES' TRIAL BRIEF

The United States, by and through United States Attorney Donald Q. Cochran and Assistant United States Attorneys Sara Beth Myers and Civil Rights Attorney Michael Songer, respectfully submits this trial brief of issues and law that may arise at trial.

## I. Brief Statement of the Evidence

On the evening of November 5, 2016, J.N., a detainee in the Cheatham County Jail, began hitting his head against the cell door. Several corrections officers responded to J.N.'s cell and removed him from the cell to a restraint chair. The officers had difficulty controlling J.N. and Corrections Officer Daniel Bratton tased J.N. before he could be secured into the restraint chair. Later that evening, as J.N. was secured in the chair and surrounded by the three Corrections Officers, Defendant Mark Bryant used a Taser on J.N. four times for a total of 50 seconds. The tases violated Cheatham County Sherriff's Office ("CCSO") policy and Bryant's training. Bryant later prepared an incident and use of force report in which he gave false information and failed to report the extent to which he used the Taser on J.N.

Approximately two hours later, while corrections officers prepared J.N. for transport to a medical facility, he became agitated and struggled as officers began removing him from the restraint chair so that he could be placed into a transport vehicle. Bryant again used a Taser on J.N. multiple times. The officers eventually handcuffed J.N. while he remained in the restraint

chair. After J.N. calmed down and while his hands were cuffed and his legs were shackled, Bryant tased J.N. for a period of 11 seconds. Then-Sergeant Gary Ola, the Taser trainer and highest ranking officer during that shift, was standing next to J.N. when Bryant tased him. Ola later lied to federal agents, claiming that he had never seen Bryant tase J.N. when J.N. was handcuffed. Ola pled guilty to two counts of lying to federal agents in relation to this tasing incident on September 11, 2019. Bryant later prepared an incident and use of force report regarding this second series of tasings in which he again gave false information and failed to report the extent to which he used the Taser on J.N.

Both of Bryant's unlawful tases of J.N. are captured on video from both the jail and the camera on the Taser that Bryant used to tase J.N. Defense counsel has represented to the United States that he will not object to the authenticity of these recordings or other materials that were provided by CCSO.

The United States plans to present the video evidence, testimony from officers who witnessed the incidents, and other evidence that it has produced to the defense that satisfies the elements of the crimes with which the defendant has been charged. The victim will not testify at trial because he is deceased for reasons unrelated to this case.

## II. Elements of the Offenses

Count One charges that, at approximately 8:00 p.m., Bryant used unlawful force on J.N., a pretrial detainee in the Cheatham County Jail, by tasing him multiple times without legal justification. Count Two charges that, at approximately 10:20 p.m., Bryant again used unlawful force on J.N. by tasing him without legal justification while J.N. was handcuffed. The United States must establish the following elements in relation to Counts One and Two: (1) Bryant acted under color of law; (2) Bryant deprived J.N. of a right secured or protected by the Constitution or

laws of the United States; (3) Bryant acted willfully; and (4) Bryant's conduct caused bodily injury or he used a dangerous weapon. 18 U.S.C. § 242.

Count Three charges Bryant with authoring a false and misleading report about his tasing J.N. at 8:00 p.m. Similarly, Count Four charges Bryant with submitting a false and misleading report about tasing J.N. at 10:20 p.m.

The United States must establish the following elements in relation to Counts Three and Four: (1) Bryant knowingly altered, concealed, covered up, or made a false entry in a record or document; (2) he did so with intent to impede, obstruct, or influence an investigation; and (3) the investigation was of a matter within the jurisdiction of a federal agency or department, or in relation to or contemplation of any such matter. 18 U.S.C. § 1519.

## III. Evidentiary Issues

### A. Lay Witness Testimony

During the trial, the United States plans to offer the testimony of both past and current Cheatham County Jail Corrections Officers who witnessed Bryant tase J.N. In addition to testimony regarding the tasings, these witnesses will testify about the Taser training that they received while they were employed at the jail. Specifically, they will testify about the topics that the training covered, including when Taser use is and is not authorized, and the number and duration of Taser cycles that are permissible per incident. They are also expected to testify about their knowledge regarding the proper use and documentation of force, including Taser use, at the Cheatham County Jail. The witnesses will also testify about how their training and experience informed their perceptions of and reactions to the tasings of J.N. on November 5, 2016.

3

As these witnesses will be testifying about their own experience and knowledge, gained from years of service as law enforcement officers, they are lay witnesses. Under Fed. R. Evid. 701,

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Lay witnesses may testify to the knowledge gained from their experience in a particular field or industry. *See e.g., United States v. Brooks,* 893 F.2d 1335, *2 (6th Cir. 1990) (airport police officer allowed to speak about his knowledge of airport operations and luggage labeling procedures); *United States v. Whaley,* 860 F.Supp. 2d 584, 587 (E.D. Tenn. 2012) (testimony of bank employees regarding whether bank would have issued loans to certain borrowers in absence of fraud was admissible lay witness testimony). Indeed, witnesses may also offer their opinions or inferences where they are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." *United States v. Espino*, 317 F.3d 788, 797 (8th Cir. 2003). "Personal knowledge or perceptions based on experience [are] sufficient foundation for lay opinion testimony." *United States v. Faulkner*, 636 F.3d 1009, 1018 (8th Cir. 2011) (internal quotation marks omitted).

The testimony of these witnesses will not constitute expert testimony under Fed R. Evid. 702. The witnesses will not offer testimony regarding Taser design, function, or technical knowledge related to Taser operation. Instead, they will testify to the factual content of the training they received or provided, and their personal knowledge based on experience and common sense. These witnesses will also testify to their perceptions of and reactions to Bryant's particular uses of force that they observed, based on their experience and training.

4

Similarly, the United States plans to elicit testimony from Gary Ola, the former Taser training officer at Cheatham County Jail, regarding the material that he taught Bryant in his classes, and what information officers need to learn to become certified in Taser use. Both the testimony of the Cheatham County officers and the instructor will illustrate that Bryant's actions contradicted what they had learned through experience, training, and common sense. This testimony is admissible pursuant to Fed. R. Evid. 701 because it will consist of facts and perceptions based on the particularized knowledge of the officers gained from their years of training and experience. Further, the content of Bryant's training is relevant to show that he acted willfully with respect to the conduct set out in Counts One and Two.

### B. United States' Fact Witnesses and Exhibits

The United States filed its list of potential witnesses and exhibits on January 22, 2019 in accordance with the Court's Scheduling Order. (DE 15). The United States may not call every person on that list. The United States reserves the right to call additional witnesses who are not currently listed in response to any defense that the defendant might choose to present.

Similarly, although the United States requested reciprocal discovery at the outset of this case, to date, it has not received any items from the defense. Notably, the defense has not filed an exhibit list and, in the event that any defense exhibits are permitted to be used during trial, the United States reserves its right to use additional exhibits that are not currently listed on its exhibit list for the purposes of impeachment, to refresh a witness's recollection, or for other purposes.

### IV. Defense Witnesses

The defense filed its list of potential witnesses on January 29, 2019. (DE 33.) The United States is not aware that any of the witnesses listed, apart from the Defendant, were present for any of the relevant events in the Cheatham County Jail on November 5, 2016. Accordingly, it is highly

likely that the defense witnesses plan to offer improper character testimony regarding either Bryant or the victim.  As set out in the Government's Motion in Limine (DE 22), such evidence should be excluded pursuant to Federal Rules of Evidence 404(a), 404(b), and 405(a).

Further, any introduction of impermissible character evidence, particularly if the defense seeks to introduce testimony regarding Bryant's character for truthfulness should also be disallowed.  Federal Rule of Evidence 608(a) provides that "[a] witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character . . . after the witness's character for truthfulness has been attacked." The Rule goes on to state that "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b).

The Sixth Circuit recognizes that "our rules of evidence generally frown upon using evidence of past "wrongs" or "acts" to show "the character of a person in order to show action in conformity therewith" on a later occasion. *See Boggs v. Collins,* 226 F.3d 728, 744 (6th Cir. 2000); Fed. R. Evid. 404(b); *see also Holloran v. Duncan,* 2017 WL 1194495 (W.D. Tenn. Mar. 30, 2017) (holding that the court's exclusion of witness testimony in relation to an alleged prior bad act was proper and noting that before Rule 404(b) evidence may be introduced, the court "must assure itself that the other act did, in fact, occur" and prevent the jury from conducting "a trial within a trial."); *see also Howerton ex rel. Howerton v. Blomquist,* 240 F.R.D. 378, 381 (E.D. Mich Feb. 1, 2007) (excluding witness testimony that would have addressed defendant's prior alleged bad act, which plaintiff sought to introduce as part of the defendant's pattern of conduct, because it would result in a trial within a trial.)  Indeed, "[s]imilar concerns anchor Rule 608's prohibition of

extrinsic evidence to prove "[s]pecific instances of the conduct of the witness [ ] for the purpose of attacking or supporting the witness's character for truthfulness," and placing within the discretion of the trial court whether to allow cross-examination on specific conduct when it is "probative of truthfulness or untruthfulness." *Id.*; Fed. R. Evid. 608(b). "Such rules are designed to prevent distracting mini-trials on collateral matters." *Boggs*, 226 at 744. In *Boggs*, the defense sought to introduce testimony that a victim had made a false previous accusation of rape against another person—effectively "asking the jury to infer that the alleged prior incident meant that [the victim] was also accusing [the present defendant] falsely." *Id.* The court held that the exclusion of testimony regarding the victim's alleged prior accusation did not violate defendant's right to present a defense. *Id.* at 745.

Additionally, to the extent that any of the defense witnesses plan to offer expert testimony pursuant to Federal Rule of Evidence 702, such testimony should be excluded as untimely. Expert reports were due on January 21, 2019.

### V. Defendant's Statements and Victim's Statements

A defendant's own statement is not considered hearsay. Fed. R. Evid. 801(d)(2)(A). Use of a defendant's statement is not limited to only a defendant's statement against his or her interest. *See United States v. Turner*, 995 F.2d 1357, 1363 (6th Cir. 1993). Indeed, a defendant's statements that are later proven to be false or misleading are not hearsay given they are not introduced for a purpose of proving the truth of the statement offered. *Anderson v United States,* 417 U.S. 211 (1974); *United States v Hathaway,* 798 F.2d 902 (6th Cir. 1986); *United States v Krohn,* 573 F.2d 1382 (10th Cir. 1978). Additionally, a defendant cannot avoid testifying by seeking admission of portions of his statements through Rules 801 and 106 because they are not "offered against an

7

opposing party" and, therefore, constitute inadmissible hearsay. *See United States v. Adams*, 722 F.3d 788, 826 (6th Cir. 2013); *United States v. McDaniel,* 398 F.3d 540, 545 (6th Cir. 2005).

The United States plans to use several of Bryant's statements during the trial, including statements that he made while he tased J.N. and statements that he made in his subsequent reports regarding the tasings. Notably, the United States is unable to call the victim in this case as he is deceased (for reasons unrelated to the charges in the present case.) The parties to the case are the United States and the defendant and, therefore, the defense cannot elicit hearsay statements allegedly made by the victim pursuant to Rule 801.

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2019, I electronically filed the foregoing Witness List with the clerk of the court by using the CM/ECF system, which will send a Notice of Electronic Filing to the following Defense Counsel: Peter Strianse, 315 Deaderick Street, Suite 1700, Nashville, TN.

*s/ Sara Beth Myers*
Sara Beth Myers
Assistant United States Attorney