| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 3:18-CR-144 |
| ) | Chief Judge Crenshaw |
| MARK BRYANT ) | |

**UNITED STATES' PRETRIAL MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF THE CHEATHAM COUNTY SHERIFF'S OFFICE *POST HOC* DETERMINATIONS**

The United States submits this Motion in limine to exclude testimony or other references to any after-the-fact investigations or administrative determinations of the appropriateness of the defendant's actions by officials at the Cheatham County Sheriff's Office ("CCSO"). Testimony about such ex-post determinations is improper lay witness testimony, highly prejudicial, and not relevant to any of the issues before the jury in this case. The charges in the Indictment center on the defendant's actions and mental state at the time he tased Jordan Norris on the evening of November 5, 2016—not weeks or months later when other CCSO officials reviewed the incident.

**I.     Background**

Defendant Mark Bryant tased detainee Jordan Norris multiple times while he was restrained inside the Cheatham County Jail on the evening of November 5, 2016. Counts One and Two of the Indictment charge the defendant with using excessive force on two separate occasions that night by tasing Mr. Norris multiple times at 8:00 p.m. and again at 10:30 p.m. Cheatham County Sheriff Michael Breedlove and Jail Administrator JJ Hannah were not present at the jail on November 5, 2016, and did not witness the defendant's actions that night.

In the weeks following the tasings, Lieutenant Hannah and other CCSO officials conducted a preliminary review of the 8:00 p.m. incident charged in Count One of the Indictment, in which

1

the defendant tased Jordan Norris four times for a total of 50 seconds. During this preliminary investigation, CCSO officials did not review audio from the incident or Taser log records showing how long the defendant's Taser was activated. The officials therefore were not aware of the length of the defendant's tases or the comments he made during them—including the defendant taunting Mr. Norris by saying he would "keep going until I run out of batteries." CCSO took no disciplinary action against the defendant following this preliminary review.

Several months later, in July 2017, CCSO leadership obtained and reviewed audio of the 8:00 p.m. incident and Taser log records. After reviewing this additional information, CCSO leadership terminated the defendant and made a criminal referral to the Tennessee Bureau of Investigation ("TBI").

During the first trial of this case in February 2019, defense counsel referenced CCSO's initial review in his opening statement, telling the jury that, "[a]pproximately one week after the event," jail administrators met with the defendant as part of their review of the incident, during which the defendant explained "what he did and why he did it." Defense counsel further stated that, when the defendant followed up on the status of this inquiry in February 2017, the administrators "tell him at that time that the administration people had looked at it, they reviewed it, and found that his actions were justified . . . And they told him, 'You're clear. You didn't violate any policy.'" Doc. 62 at 31-32.

After the defense referenced the investigation in its opening statement, the Government and the defense each elicited testimony about this investigation from CCSO Lieutenant JJ Hannah. Hannah testified that, at the time of his initial review, he "didn't find any policy that [the defendant] violated." Doc. 64 at 48-49. Hannah later explained that, after he subsequently reviewed the audio of the incident and the Taser logs in the summer of 2017, he referred the incident to TBI. Hannah

2

testified that once he was able to "see[] everything at once," he agreed that the defendant violated CCSO's policies that existed at the time of the incident. *Id*. at 56.

Defendant Bryant likewise testified about CCSO's preliminary investigation. According to the defendant, Lieutenant Hannah and Sheriff Breedlove told him he "was clear and they felt it was justified." *See* Doc. No. 65 at 32. Defense counsel also referenced this testimony about the preliminary investigation in his closing argument. *See* ECF No. 67 at 33 ("In February of 2017 . . . What do they tell him? Sheriff tells him, 'You're clear. It was justified. Don't worry about it.'").

## II. After-the-Fact Determinations are Not Relevant and Highly Prejudicial

Testimony regarding after-the-fact determinations made by Sheriff Breedlove, Lieutenant Hannah, or other jail staff is irrelevant and serves merely to distract and confuse the jury. *See* Fed. R. Evid. 401, 403. Indeed, administrative determinations made weeks or months *after* November 5, 2016, cannot be relevant to assessing the defendant's state of mind at the time of the tasings or whether he used excessive force on Jordan Norris. Additionally, such testimony would likely devolve into a mini-trial regarding whether jail officials—who did not witness the incident—made the appropriate determination at each stage of their investigation. Indeed, after-the-fact administrative determinations were raised repeatedly by defense counsel during the first trial, which resulted in prolonged testimony that did not have relevance to any of the elements at issue in the case. This diversion is prohibited by Federal Rules of Evidence 401 and 403 as it is highly prejudicial and completely unrelated to the Defendant's state of mind and conduct at the time of the tasings. *See, e.g. United States v. Richardson*, 793 F.3d 612, 627-28 (6th Cir. 2015) (The district court, under Rules 403 and 608(b), properly excluded cross examination into a judicial finding that a government witness was not credible in a prior proceeding because inquiry into the circumstances of that proceeding would require "detailed testimony regarding an entirely collateral

3

matter in order to assess its probative value. This type of collateral 'mini-trial' is precisely what Rule 608(b) is intended to prevent.").

Further, suggestions that top jail officials' ex-post determinations of wrongdoing are relevant to the elements of the charges in this case imply that the administration's judgement should be substituted for the judgement of the jurors—the only people who can and should make determinations after the fact regarding whether the Defendant's conduct violated the *law*. This principle applies with particular force here, where the defendant's conduct is captured in audio and video recordings, and the jury will hear testimony from multiple witnesses who observed the defendant's actions in real time. In short, the jury has access to all information necessary to make its own after-the-fact determination regarding the Defendant's actions and mental state and would only be prejudiced by introducing evidence of such ultimate issue determinations by other officials. The risk of unfair prejudice is particularly acute for testimony relating to CCSO's *preliminary* review, when jail officials acknowledge that they lacked important information that will be shown to the jury at trial. Accordingly, evidence or testimony related to after-the-fact determinations by non-witnesses is prejudicial, not relevant, and should be excluded under Rules 401 and 403.

### III. After-the-Fact Determinations Are Hearsay and Improper Lay Opinion Testimony

Moreover, testimony about a subsequent investigation into the defendant's use of force from jail officials who were not present during the incidents charged in the Indictment is inadmissible because it is hearsay and improper lay opinion testimony. *See* Fed. R. Evid. 701 (limiting lay opinion testimony to topics "rationally related to a witness' **perception**") (emphasis added). Courts have repeatedly excluded after-the-fact reports into incidents on this basis. *United States v. Ganier*, 468 F.3d 920, 926-27 (6th Cir. 2006) (finding that an officer not disclosed as an

4

expert can only testify to lay opinion testimony when she "is a participant in the conversation, has personal knowledge of the facts being related in the conversation, or observed the conversations as they occurred"); *United States v. Perkins*, 470 F.3d 150, 156 (4th Cir. 2006) (finding officers' opinions regarding the reasonableness of another officer's use of force was inadmissible under Rule 701 because the witnesses did not see the use of force); *Brandon v. Village of Maywood*, 179 F. Supp. 2d 847, 856-57 (N.D. Ill. 2001) (Rule 701 prohibits opinion testimony of state police officers based on their after-the-fact investigation because they lacked personal knowledge of the events leading up to the shooting).

Lieutenant Hannah and other CCSO administrators who did not witness the defendant's tasing therefore may not offer lay opinion testimony about whether the defendant's actions violated CCSO policies.

Nor may witnesses offer hearsay testimony about what other CCSO officials concluded during the after-the-fact investigations. For example, in the February trial the defendant testified that Cheatham County Sheriff Breedlove allegedly told him in February 2017—four months after the incident—that his tasing was justified. Although Sheriff Breedlove did not testify at trial, defense counsel referenced these statements again in his closing argument. *See supra* at 2. It is axiomatic that such out-of-court statements offered for the truth of the matter asserted are hearsay. *See* Fed. R. Evid. 801. Neither the defendant nor other witnesses may testify to Sheriff Breedlove's purported out-of-court statements. In the first trial, the Court—without the benefit of briefing on the issue—allowed the defendant to testify to Sheriff Breedlove's statements over the Government's objection after defense counsel argued that they were "verbal acts" rather than hearsay. This argument lacks support. To constitute a "verbal act" exempt from the hearsay rule, a statement itself must affect the legal rights of the parties, such as when a party offers a bribe or

5

accepts a contract offer. *See, e.g.*, Advisory Cmte. Note, Fed. R. Evid. 801(c); *United States v. Fofana*, 543 F. App'x 578, 580 (6th Cir. 2013) (bribe is a verbal act); *United States v. Brewer*, 332 F. App'x 296 (6th Cir. 2009) (instruction to pave driveways for votes constituted a verbal act). In the Sixth Circuit, "Courts which have allowed the admission of statements under the verbal acts theory have done so because the words themselves constituted a crime." *United States v. Lawson*, 2009 WL 4720325, at * (E.D. Kent. Dec 9, 2009) (collecting cases). This limited exception does not apply to the defendant's testimony that, during CCSO's preliminary review, Sheriff Breedlove purportedly told him that his conduct was justified. Nor does any other hearsay exception apply. Sheriff Breedlove's statement is therefore inadmissible.

Regardless, even if Sheriff Breedlove's statement were admissible, the defense should not be permitted to present statements made during CCSO's preliminary review of the incident as the final conclusions reached by jail administration. Rather, if the Court permits introduction of these statements or other evidence of the preliminary review—or if the defendant opens the door by eliciting references to the preliminary review—the United States asks the Court to allow full exploration of CCSO officials' final determination in July and August 2017, which was made after jail officials reviewed all relevant facts, including audio of the incident and Taser logs. Introducing only the results of CCSO's preliminary review, which was based on incomplete evidence, would risk misleading the jury in a highly prejudicial manner.

## Conclusion

For the reasons set forth above, the United States asks the Court to prohibit references to all after-the-fact administrative determinations regarding the defendant's November 5, 2016, tasings of Jordan Norris.

6

Case 3:18-cr-00144   Document 79   Filed 12/09/19   Page 6 of 8 PageID #: 1005

Respectfully Submitted,

DONALD Q. COCHRAN
UNITED STATES ATTORNEY

*s/ Sara Beth Myers*_____
SARA BETH MYERS
Assistant United States Attorney
110 9th Avenue South
Nashville, TN 37203
615-736-5151 phone
Sara.E.Myers@usdoj.gov

ERIC S. DREIBAND
ASSISTANT ATTORNEY GENERAL

*s/ Michael J. Songer*_____
MICHAEL J. SONGER
Attorney
Civil Rights Division, Criminal Section
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
202-305-3204 phone
202-514-6588 fax
Michael.Songer@usdoj.gov

7

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2019, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a Notice of Electronic Filing to the following Defense Counsel: Peter Strianse, 315 Deaderick Street, Suite 1700, Nashville, TN.

*s/ Sara Beth Myers*
Sara Beth Myers
Assistant United States Attorney